UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | 1:12-CR-29 |
| v. ) | |
| ) | Collier/Carter |
| MAURICE RENALDO CARTER ) | |

**MEMORANDUM & ORDER**

The Court is tasked with determining whether Defendant Maurice Renaldo Carter ("Defendant") is competent to stand trial or enter a guilty plea. After reviewing the expert opinions and considering other relevant circumstances, the Court concludes that the Magistrate Judge's reasoning is sound and adopts her report and recommendation finding Defendant competent.

**I.   FACTS**

In June 2012 Defendant pleaded guilty to each count of a three-count indictment before Magistrate Judge Susan K. Lee.[1] The Magistrate Judge found he was competent to enter the guilty pleas, a determination supported by all of the parties. Before the time to object to the Magistrate

---

[1] Defendant was indicted with being a felon in possession of firearms and ammunition, in violation of 18 U.S.C. § 922(g)(1); possession with intent to distribute cocaine base ("crack cocaine"), in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). The plea agreement states that in August 2011 officers with the Chattanooga Police Department found Defendant trespassing on a front porch where two weeks earlier they had found Defendant in possession of one ounce of crack cocaine. Asked whether he had any drugs on him, Defendant replied that he kept crack rocks in a cup next to him on the porch. Officers found several individually packaged crack rocks in the cup and found $344 on Defendant. Defendant admitted the rocks were his and the money was drug proceeds. When asked if he had a gun, Defendant said "y'all really got me now," and told police he stored a handgun in a box next to him. Officers found Defendant's .357 revolver there. Defendant first told officers that a car parked in front of the residence was not his. After police called out a K-9 unit, which alerted to the vehicle, they found over 20 crack rocks in its console. After being asked again, Defendant admitted it was his car.

Judge's report and recommendation (R&R) to accept the guilty pleas expired, however, Defendant filed motions to withdraw his guilty pleas (Court File No. 15) and to undergo a mental competency evaluation (Court File No. 16).

The Magistrate Judge granted the motion for a competency evaluation (Court File No. 19). A report was prepared by forensic psychologist Dana Brauman ("Brauman"), who determined Defendant was not competent to stand trial or enter a plea (Court File No. 26). She found Defendant had dysthymic disorder and was suffering from dementia due to traumatic brain injury, after having been shot in the head in 1986. On a joint motion by the parties, the Magistrate Judge found Defendant incompetent and committed him to restoration treatment at BOP Federal Medical Center in Butner, North Carolina ("Butner") (Court File No. 27). Following the restoration period, Butner forensic psychologist Carlton Pyant ("Pyant") and Butner neuropsychologist Tracy Pennuto ("Pennuto") filed a report finding that Defendant was actively malingered in an attempt to feign incompetence and that Defendant was actually competent to stand trial or enter a plea (Court File No. 33).

The Magistrate Judge then granted Defendant's motion to obtain the opinion of another expert, clinical psychologist David A. Solovey ("Solovey") (Court File No. 37). Dr. Solovey's report determined, for reasons similar to Brauman's, that Defendant was not competent (Court File No. 43). After holding a competency hearing on September 26, 2013, the Magistrate Judge issued an R&R recommending the Court find Defendant competent to stand trial or enter a guilty plea, as he is able to understand the nature and consequences of the proceedings against him and is able to assist in his defense (Court File No. 50). The R&R provides a thorough summary of the expert opinions and background of the case.

Defendant objected to the R&R (Court File No. 51); the government did not respond to the objection. Specifically, Defendant objects to the "'weight' given to the opinions of the experts by the Magistrate," as well as the R&R's "failure to sufficiently highlight several key facts that affect the analysis of the weight of those opinions" (*id.,* p. 1). In addition, Defendant objects to the Magistrate's Judge's finding that the evidence is not in equipoise (*id.,* p. 2). Based on these objections, Defendant argues the Court should reject the R&R's finding that Defendant is competent. The Court must conduct a *de novo* review of those portions of the R&R to which objection is made. 28 U.S.C. § 636(b)(1)(C).

## II. **DISCUSSION**

Defendant first objects to the "weight" the Magistrate Judge gave to opinions of the various witnesses. Specifically, the Magistrate Judge gave more weight to the opinion of Dr. Pennuto (who found Defendant competent) "as she was the only neuropsychologist to evaluate Defendant and the other doctors seemed to defer to her expertise to varying degrees" (Court File No. 50, p. 16). Defendant argues that Dr. Pennuto's opinion does not deserve additional weight, as her tests were inconclusive. The Magistrate Judge did acknowledge the tests were inconclusive, but concluded that this was because Defendant was malingering:

> Dr. Pennuto stated that even though she was unable to do a full neurological work-up, thus making it impossible to accurately document the nature and severity of the deficits Defendant may have, she concluded Defendant was malingering and had the cognitive ability to feign incompetence.

(*id.*, p. 9). Dr. Pennuto noted that because Defendant's "suboptimal effort/motivation likely negatively affected his overall performance[,] the test battery was truncated, and the results obtained are believed to underestimate his actual cognitive abilities and cannot be accurately interpreted"

3

(Court File No. 33, p. 9). As the report also explained, "it is impossible to accurately document the nature or severity of any deficits Mr. Carter may have until such time that he is willing to provide adequate motivation for testing" (*id.*, p. 12). From the above, Defendant concludes that "it is incongruous to afford [Dr. Pennuto's] opinion the most weight [when] the tests underlying that opinion were, by her own admission, inconclusive" (Court File No. 51, p. 4).

This objection is not well taken. The tests' inconclusiveness lends support to a finding of competency, rather than detracts from it, as the tests were inconclusive because of Defendant's malingering and purposefully not giving his full effort. As the Magistrate Judge paraphrased, Dr. Pennuto testified that "Defendant actively malingered in an attempt to feign incompetence, which indicates Defendant is capable of assisting in his defense if he chooses to do so" (Court File No. 50, p. 8). Dr. Pennuto arrived at this conclusion based on a number of facts, including that Defendant could not complete a dot-to-dot test of numbers one to twenty-five, yet was able to count that range aloud. Further, Pennuto found Defendant's test scores were significantly below what even a person with mental retardation or dementia would ordinarily score, which was "strongly indicative of inadequate effort" (Court File No. 33, p. 10). In addition, while during one testing day Defendant held his pencil "in a very awkward extended grip" and said he always holds it that way, the next day he wrote "with a normal pencil grip and very nice penmanship" (*id.*, p. 9). Also, as Dr. Pyant pointed out, Defendant adjusted well to life at Butner, showing up at the proper times for exercise, to receive medication, and to attend meetings, whereas a person suffering from dementia would have difficulty remembering such things (*id.*, p. 13-14).

As Dr. Pennuto noted in the report, "some cognitive/intellectual sophistication is needed in order to persuasively deceive mental health professionals regarding one's mental abilities" (Court

4

File No. 33, p. 11).[2] In light of the above findings, the fact that Dr. Pennuto's tests were inconclusive as to Defendant's level of ability does not mean the Magistrate Judge erred in giving her opinion additional weight.

Defendant also argues the Magistrate Judge should not have afforded Dr. Solovey's testimony less weight because he was a clinical psychologist instead of a forensic psychologist. The Magistrate Judge noted that Dr. Solovey "is not a forensic psychologist and, thus, I accorded his opinion somewhat less weight than the opinions of the two forensic psychologists, Dr. Brauman and Dr. Pyant," even though Dr. Solovey had been a psychologist for longer than the other two (Court File No 50., p. 16). Because of the specialized nature of competency evaluations, the Court agrees with the Magistrate Judge that it is appropriate in this case to give somewhat more weight to the testimony of a forensic psychologist rather than a clinical psychologist. In particular, forensic psychologist Pyant has conducted competency hearings at Butner since 2000, providing him with significant experience and skills bearing directly on this type of competency evaluation.

Defendant additionally objects to the Magistrate Judge affording Dr. Solovey's opinion less weight because he evaluated Defendant over the shortest period of time. Defendant notes that although Defendant was at Butner for an extended period—four months—the record is unclear whether Drs. Pyant and Pennuto actually spent more one-on-one time with Defendant than Drs. Brauman and Solovey. Defendant discounts the fact that much of the information Dr. Pyant used to compile his report was gathered second hand from support staff at Butner. While the Court recognizes that the Butner experts' one-on-one time with Defendant may not have been that much

---

[2] For Drs. Pyant's and Pennuto's complete explanation of their malingering finding, see Court File No. 33, pp. 12-14.

greater than the other experts, it notes that Drs. Pyant's and Pennuto's opportunity to consider reports from Butner staff over a four-month period serves only to strengthen their ability to make an accurate assessment.

The Court also notes that, as Dr. Pyant's report points out, Defendant's objective behavior demonstrates he has an adequate level of understanding. Defendant was able to follow the rules at Butner, take care of his hygiene, and arrive to appointments on time, while those with serious mental impairments usually cannot maintain such behavior. Defendant has some twenty-one convictions, half of which were for selling drugs, crimes that involve a level of planning. He had never been found to suffer from mental disease or defect during those criminal proceedings, even though most occurred after his gunshot wound to the head. When Defendant was arrested, he admitted to police he had a gun and said "y'all really got me now," then proceeded to lie to police to evade responsibility. Further, Dr. Pyant noted that Defendant would communicate on numerous topics during their discussions, but would shut down or refuse to cooperate when the subject of his case arose. Defendant certainly has the right not to talk about his case. That said, the fact that he freely discussed other matters, but then shut down regarding his case, tends to show that he understands the seriousness of the charges and that he is being called to answer for his actions.

### III. CONCLUSION

For the foregoing reasons, the Court agrees with the Magistrate Judge that, rather than being in equipoise, the evidence shows by a preponderance that Defendant is able to understand the nature and consequences of the proceedings against him and is able to assist in his defense. Accordingly, the Court **ACCEPTS** and **ADOPTS** the R&R (Court File No. 50), and **DETERMINES** Defendant

is competent to stand trial or enter a guilty plea.

Defendant having moved to withdraw his guilty pleas before the Court accepted the guilty plea R&R, the Court **GRANTS** Defendant's motion to withdraw his guilty plea (Court File No. 15). The Court will provide new deadlines in this case in a separate order.

**SO ORDERED.**

**ENTER:**

/s/
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**

7